SOUTHERN DISTRICT OF NEW YORK
U.S. DISTRICT COURT
-------------------------------------X  Case No.
SPYROS PANOS,

                         <u>COMPLAINT</u>

            Plaintiff,

   -against-

UNIVERSAL FOREST PRODUCTS, INC. and
SHAWNLEE CONSTRUCTION, LLC,

            Defendants.
-------------------------------------X

    Plaintiff Spyros Panos, by his attorney, Gabriel Fischbarg, Esq., as and for his Complaint against defendants herein, alleges as follows:

    1. At the time of filing the Complaint, plaintiff Spyros Panos ("Panos") was an individual domiciled and residing in Hopewell Junction, New York (Dutchess County, New York).

    2. Upon information and belief, defendant Universal Forest Products, Inc. ("UFP") is a corporation formed and existing pursuant to the laws of the State of Michigan with principal place of business in Grand Rapids, Michigan.

    3. Upon information and belief, defendant Shawnlee Construction LLC ("Shawnlee"), is a limited liability company formed and existing pursuant to the laws of the State of Michigan with principal place of business in Grand Rapids, Michigan.

    4. Upon information and belief, at all relevant times, the members of Shawnlee were and are UFP Eastern Division Inc. ("UFP Eastern") and UFP Holding Co. Inc. ("UFP Holding"). Upon information and belief, at all relevant times, UFP Eastern was and is a corporation duly organized and existing under the laws of the State of Michigan with principal place of business in Union City,

Georgia.  Upon information and belief, UFP Holding is a corporation formed and existing pursuant to the laws of the State of Michigan with principal place of business in Grand Rapids, Michigan.

5. Upon information and belief, at all relevant times, defendant UFP owned and owns UFP Eastern and UFP Holding.

6. Upon information and belief, at all relevant times, Robert Lees was a senior executive of UFP and Shawnlee.  Upon information and belief, at all relevant times, Mr. Lees acted on behalf of defendants and within the scope of his work for UFP and Shawnlee.

7. Upon information and belief, at all relevant times, Kevin Dicello was a vice president of operations of UFP and Shawnlee.  Upon information and belief, at all relevant times, Mr. Dicello acted on behalf of defendants and within the scope of his work for UFP and Shawnlee.

8. Upon information and belief, at all relevant times, Michael Barnett was the husband of Denise Barnett.  Upon information and belief, at all relevant times, Michael Barnett was the agent, employee, partner, joint-venturer, co-conspirator, owner, principal, shareholder, member, officer, director and/or employer of VCH, and is and at all times herein mentioned was, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, membership or joint venture, and that the acts and conduct herein alleged of Mr. Barnett were

known to, authorized by and/or ratified by VCH.

9. Upon information and belief, Michael Barnett was the agent, employee, partner, joint-venturer, co-conspirator, and/or employer of the Denise Barnett, and is and at all times herein mentioned was, acting within the course and scope of that agency, employment, partnership, conspiracy, or joint venture, and that the acts and conduct herein alleged of Michael Barnett were known to, authorized by and/or ratified by Denise Barnett.

10. This action arises under 28 U.S.C. 1332 (a)(1), i.e., as a civil action between citizens of different states with the matter in controversy exceeding the value of $75,000.00, exclusive of interest and costs. Pendent jurisdiction over all claims and parties arising from the same nucleus of operative facts lies in consideration of judicial economy, convenience, and fairness to litigants. Venue is proper in this District.

11. Upon information and belief, on or about July, 2007, DES Development LLC ("DES"), a New York limited liability company, entered into an agreement with John Berian and June Berean, owners of 22 acres of real property at 20-70 State Route 299, Town of Lloyd, Ulster County, New York (the "Highland Square Property"), allowing DES (or its designated entities) to exercise a right to purchase the Highland Square Property. On or about December, 2008, Vineyard Commons Holdings, LLC ("VCH"), purchased the property located at 330 Vineyard Street, Highland, New York (the "Vineyard Property").

12. On or about April, 2009, Michael Barnett, acting on behalf of Denise Barnett (manager of VCH's manager (DDFM, LLC) and managing member of DES) did inform Panos and represented to him by telephone that (1) VCH and DES would only be able to develop the Vineyard Property and the Highland Square Property, respectively, and earn respective profits from developing those properties if VCH and DES (or the designated entities that purchased the properties) obtained financing that was insured by the U.S. Department of Housing and Urban Development ("HUD") and (2) VCH and DES would use legal methods to attempt to secure such financing. Plaintiff was located in Dutchess County when this communication occurred.

13. VCH never disclosed to plaintiff that VCH secured HUD-insured financing only by conducting an illegal kickback scheme that included the use of a $650,000 letter of credit issued by UFP to VCH's lender described more fully below. If VCH had disclosed this material fact to plaintiff, plaintiff would not have purchased and/or maintained his membership interests in VCH, HSD (defined below) and WOTHV (defined below).

14. Relying on such representations in paragraph 12 above and the omissions in paragraph 13 above, on or about May 1, 2009, plaintiff entered into an agreement with a Denise Barnett to purchase her five percent (5%) membership interest in VCH. Pursuant to such agreement plaintiff paid Ms. Barnett $500,000.

15. Relying on such representations in paragraph 12 above

4

and the omissions in paragraph 13 above, on or about May 20, 2009, plaintiff entered into an agreement with DES to purchase (1) a five percent (5%) membership interest in Highland Square Development LLC (an entity designated by DES to purchase a portion of the Highland Square Property) and (2) a five percent (5%) membership interest in "a corporation to be formed to operate the assisted living facility" that would be built on the Highland Square Property. Pursuant to such agreement, plaintiff paid DES and/or Denise Barnett a total of $715,000 from May, 2009 to May, 2010 for a five percent (5%) interest in Highland Square Development, LLC ("HSD") and a five percent (5%) membership interest in Windows Of The Hudson Valley, LLC ("WOTHV"), an entity formed by DES to operate an assisted living facility at the portion of the Highland Square Property owned by HSD.

16. On or about June, 2009, VCH and defendants, through the work of Mr. Lees and Mr. Dicello, completed part of a criminal conspiracy that began in early 2009 and included mail fraud and an illegal kickback scheme to secure the HUD-insured financing only by utilizing a $650,000 letter of credit issued by UFP to the lender.

17. In truth, despite VCH's representation described in paragraph 12 above that VCH would use legal means to obtain HUD-insured financing, VCH never intended on securing HUD-insured financing through legal means and did not actually secure HUD-insured financing through legal means.

18. In or about March, 2009, UFP (through its representatives Mr. Lees and Mr. Dicello), Shawnlee (through its representatives Mr. Lees and Mr. Dicello), VCH, and Scanlan Company Inc. (VCH's general contractor for the Vineyard Property) entered into an illegal agreement by which UFP and Shawnlee, as a subcontractor for the Vineyard Property, agreed to bill VCH (through Scanlan Company Inc.) for labor and materials in an amount approximately $865,000 greater than the amount actually incurred by UFP and Shawnlee. The parties to said agreement intended for the $865,000 difference between the actual cost and the inflated contract price to be returned to VCH as a kickback and that VCH's lender (i.e., mortgagor on the Vineyard Property) would unwittingly finance the kickback by disbursing HUD-insured funds on the basis of inflated draw requests. From approximately July, 2009 to approximately January, 2012, VCH and/or UFP received the approximately $865,000 in HUD-insured funds from VCH's lender through the kickback scheme.

19. Because VCH required additional funds in order to secure HUD-insured financing in order to develop the Property, UFP provided a $650,000 letter of credit to VCH's lender in June, 2009, to make up the shortfall in required funds. In June, 2009, UFP, Shawnlee and VCH agreed that the letter of credit was secured by the illegal $865,000 kickback.

20. In December, 2010, two entities designated by DES (Route 299 Retail Center LLC and HSD) purchased the Highland

Square Property pursuant to DES's agreement with John Berian and June Berean and received deeds for separate parcels within the Highland Square Property.

21. In approximately 2012, VCH could not complete the development of the Vineyard Property once the scheme to defraud HUD was exposed to HUD. As a result, VCH defaulted on its mortgage on the Vineyard Property. In 2013, HUD assumed the loan on the Vineyard Property after VCH defaulted on the loan. Upon assuming the loan, HUD sold the Vineyard Property to recoup its loan. After such sale, there were no surplus proceeds above the amount of the HUD loan remaining that were returned to VCH. Plaintiff lost the entire value of his membership interest in VCH because the Vineyard Property was the only asset of VCH and all of the capital contributions made to VCH by its members had been expended by the time that the fraud perpetrated upon HUD was discovered.

22. In approximately 2012, HSD could not complete the development of its portion of the Highland Square Property because (1) HSD needed HUD financing to pay for such development and (2) HSD could not obtain HUD financing once the scheme to defraud HUD was exposed to HUD. As a result, HSD defaulted on its mortgage on the Highland Square Property.

23. In 2013, UFP Atlantic Division LLC (a division of defendant UFP), the mortgagee of the Highland Square Property, foreclosed on the Highland Square Property after HSD defaulted on

7

the mortgage. Upon a foreclosure auction sale, UFP Atlantic Division LLC recouped only a portion of its loan. After such sale, there were no surplus proceeds above the amount of the loan remaining that were returned to HSD. Plaintiff lost the entire value of his membership interest in HSD because the Highland Square Property was the only asset of HSD and all of the capital contributions made to HSD by its members had been expended by the time that the fraud perpetrated upon HUD was discovered.

24. Plaintiff lost the entire value of his membership interest in WOTHV because the right to operate a portion of the Highland Square Property was the only asset of said LLC and all of the capital contributions made to the LLC by its members had been expended by the time that the fraud perpetrated upon HUD was discovered.

25. In 2015, the U.S. government indicted Michael Barnett, Mr. Lees and Mr. Dicello alleging, among other things, their wrongdoing described above in the criminal case entitled U.S.A. v. Michael Barnett, Robert Lees and Kevin Dicello, U.S.D.C., Southern District of New York, 15 Cr. 17 (KMK). On May 20, 2016, the U.S. Attorney's Office for the Southern District of New York issued a press release advising the public that a jury had found that Mr. Lees had committed the acts and wrongdoing described above.

26. Plaintiff first learned of the wrongdoing committed by VCH and DES upon HUD and VCH's lender upon reading the May 20, 2016 press release.

27. On November 23, 2016, Mr. Lees's motion to vacate the jury's findings filed in the criminal case was denied. On November 21, 2016, Mr. Barnett pleaded guilty to committing the illegal acts described above, among other illegal acts. On June 9, 2017, Mr. Dicello pleaded guilty to committing the illegal acts described above, among other illegal acts.

28. As a result of the misrepresentation that VCH would use legal means to obtain HUD-insured financing described in paragraph 12 above and the omissions described in paragraph 13 above, plaintiff has paid and lost approximately $1,215,000.

29. Upon information and belief, defendants and each of them were the agents, employees, partners, joint-venturers, co-conspirators, owners, principals, shareholders, members, officers, directors and/or employers of the remaining defendants, and each of them and are and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, membership or joint venture, and that the acts and conduct herein alleged of each such defendant were known to, authorized by and/or ratified by the other defendants, and each of them.

30. As described above, VCH and DES made the representations to plaintiff in paragraph 12 above and omitted disclosing to plaintiff the material facts described in paragraph 13 above. Upon information and belief, in truth, at the time of such representations, VCH and DES knew that the representation

9

that VCH would use legal means to obtain HUD-insured financing was not true. Upon information and belief, VCH and DES were aware of the material facts not disclosed to plaintiff described in paragraph 13 above in April, 2009 and May, 2009.

31. Plaintiff thereby relied on said misrepresentation and omissions and purchased membership interests in VCH, HSD and WOTHV.

32. VCH and DES intentionally and knowingly made the false and fraudulent misrepresentation and omissions to induce plaintiff purchase membership interests in VCH, HSD and WOTHV.

33. Plaintiff, to his substantial detriment, reasonably relied on the aforementioned misrepresentation and omissions, believing the misrepresentation to be true, and unaware of the omitted material facts, and expended $1,215,000 in purchasing membership interests in VCH, HSD and WOTHV.

34. But for the misrepresentation and omissions, plaintiff would not have expended $1,215,000 in purchasing membership interests in VCH, HSD and WOTHV.

35. Because VCH and DES fraudulently intended to induce plaintiff to detrimentally rely on the intentional misrepresentation and omissions, and because plaintiff did detrimentally rely upon the intentional misrepresentation and omissions, and because VCH and DES concealed the truth from plaintiff, VCH and DES committed fraud upon plaintiff.

FIRST CAUSE OF ACTION
(Aiding and Abetting Fraud Against Defendants)

36. Defendants aided and abetted the fraud perpetrated by VCH and DES upon plaintiff. Defendants knowingly participated in the fraud by orchestrating the illegal kickback scheme with VCH and issuing a $650,000 letter of credit to VCH's lender necessary to secure HUD-insured financing in order to develop the Vineyard Property.

37. At all relevant times, defendants had actual knowledge of the fraud by VCH and DES upon plaintiff because defendants had knowledge of VCH's need to secure HUD-insured financing in order to develop the Vineyard Property and actively assisted VCH in obtaining such financing through illegal means including the issuance of a letter of credit secured by proceeds of an illegal kickback.

38. Defendants provided substantial assistance to VCH and DES in connection with the fraud by (1) affirmatively assisting VCH to secure HUD-insured financing through illegal means and (2) orchestrating the illegal kickback scheme to obtain $850,000 utilized to secure the $650,000 letter of credit issued by UFP to VCH's lender.

39. Such conduct by defendants enabled the fraud upon plaintiff by VCH and DES to occur.

40. Because defendants aided and abetted the fraud by VCH and DES, plaintiff is entitled to damages from defendants in an amount to be determined at trial, but not less than $1,215,000, plus interest, expert witness fees, costs and attorneys fees.

41. In addition, defendants' aiding and abetting of the fraud by VCH and DES was made in bad faith as the subcontractor of VCH on the Property, in flagrant disregard of their duties and obligations to plaintiff and were committed maliciously, knowingly, intentionally, recklessly, and/or with a conscious disregard of plaintiff's rights and with willful fraud and deceit, plaintiff is entitled to recover punitive damages in an amount to be determined at trial, in addition to the monetary damages sought herein.

<u>SECOND CAUSE OF ACTION</u>
(Negligence by Defendants)

42. Plaintiff repeats and realleges the allegations of paragraphs 1 through 41 of the complaint as if set fully set forth herein.

43. As VCH's subcontractor, defendants had a duty of reasonable and ordinary care in its dealings with VCH.

44. Defendants failed to exercise reasonable care, skill and diligence as VCH's subcontractor and breached their duty to plaintiff, a member of VCH, by the misconduct set forth above including, but not limited to: affirmatively assisting VCH to secure HUD-insured financing through illegal means and (2) orchestrating the illegal kickback scheme to obtain $865,000 utilized to secure the $650,000 letter of credit issued by UFP to VCH's lender.

45. As a direct and proximate result of the negligence of defendants alleged above, plaintiff is entitled to damages in an

amount to be determined at trial, but not less than $1,215,000, plus interest, expert witness fees, costs and attorneys fees.

46. In addition, because defendants' misconduct was in bad faith and in flagrant disregard of their obligations to plaintiff, and were committed maliciously, knowingly, intentionally, recklessly, and/or with a conscious disregard of plaintiff's rights and with willful fraud and deceit, plaintiff is entitled to recover punitive damages in an amount to be determined at trial, in addition to the monetary damages sought herein.

JURY DEMAND

Plaintiff demands a trial by jury.

WHEREFORE, the plaintiff respectfully prays the Court for judgment as follows:

a. On the first cause of action for aiding and abetting fraud by defendants, for judgment against defendants in the amount to be provable at trial, but believed to be at least $1,215,000, together with the costs and disbursements of this action plus interest, expert witness fees, and attorneys fees, plus punitive damages to be determined at trial.

b. On the second cause of action for negligence against defendants for judgment against defendants in the amount to be provable at trial, but believed to be at least $1,215,000, together with the costs and disbursements of this action plus interest, expert witness fees, and attorneys fees, plus punitive damages to be determined at trial.

Dated: New York, New York
March 7, 2018        ____/s/_____
                     Gabriel Fischbarg, Esq. (GF 5456)
                     230 Park Avenue, Suite 900
                     New York, NY 10169
                     917-514-6261
                     Attorney for plaintiff